B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| POSITECH INTERNATIONAL, INC. ) | Case No.: 5:19-bk-00866 |
| ) | |
| Debtor. ) | Chapter 11 |
| _____) | |
| ) | |
| POSITECH INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | AP. No.: 5:20-ap-00007 |
| ) | |
| SAUNDRA CAPREHART and ) | |
| VICTORIA THALMAN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## **MEMORANDUM OPINION**

Pending before the court is a motion for judgment on the pleadings filed by Positech International, Inc. (the "Debtor"), regarding the complaint it filed against Saundra Capehart and Victoria Thalman (collectively, the "Defendants") in their capacities as co-administrators of Woodrow J. Knollinger's death estate. Specifically, the Debtor claims that the Defendants are liable for a breach of contract for the sale of real property. It seeks a judgment against the Defendants in the amount of $440,000.00 plus consequential damages. The Defendants dispute their liability under the contract. Specifically, the Defendants contend that they are under no obligation to pay the purchase price for the real property, the property would add no benefit to the estate, nor do they even seek an interest in the property.

For the reasons stated herein, the court will grant the Debtor's motion for judgment on the pleadings.

1

## I. BACKGROUND

The facts in this case appear to be undisputed. The Debtor is a corporation with a principal place of business located at 170 N. 17th St., Wheeling, WV 26003. Woodrow J. Knollinger (also referred to as the "Decedent") was an individual who resided at 77 Stamm Cir., Wheeling, WV 26003. Ms. Capehart is an individual residing at 1269 National Rd., Georgetown #31, Wheeling, WV 26003. Ms. Thalman is an individual residing at 222 Jefferson Ave., Wheeling, WV 26003.

On October 3, 2019, the Debtor filed its Chapter 11 bankruptcy petition. On November 20, 2019, the court entered an order allowing the Debtor to employ an auctioneer to sell the Debtor's real estate located at 170 N. 17th St., Wheeling, WV 26003 (the "Warwood Property") free and clear of liens, with liens attaching to the proceeds. On the same day, an auction was held for the Warwood Property. Mr. Knollinger bid $400,000.00. Ultimately, he was the highest bidder at the conclusion of the auction. The auction required the highest bidder to pay a buyer's premium of 10% of the final bid price. Therefore, the total to be paid to the Debtor was $440,000.00.

Subsequently, a contract was memorialized in writing on November 23, 2019 (the "Purchase Agreement"). The Purchase Agreement included a description of the Warwood Property, the purchase price of $440,000.00, and Mr. Knollinger's signature. Notably, it also stated that "[t]his contract is made for the benefit of each party hereto, their heirs, personal representatives, successors or assigns." There were no buyer contingencies upon the sale of the Warwood Property. The Purchase Agreement also allowed the seller the option, upon a breach by the purchaser, to treat the contract as null and void, with the earnest money being forfeited. Mr. Knollinger paid $5,000.00 to the auctioneer as earnest money.

Before closing, however, Mr. Knollinger communicated to Debtor's counsel that he no longer intended to close on his purchase of the Warwood Property. During the pendency of this proceeding, Mr. Knollinger passed away. The Defendants were named co-administrators of his death estate. Therefore, the court permitted the Debtor to amend its complaint to name the Defendants as parties to this case rather than Mr. Knollinger. The Defendants continued to refuse any liability under the Purchase Agreement.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. ("Rule") 12(c), made applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b), provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions are

subject to the same legal standards applied to motions made under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The party moving for dismissal has the burden of showing that no claim for which relief can be granted has been stated. *Tillette v. Ben. W. Va., Inc. (In re Tillette)*, 557 B.R. 902, 906 (Bankr. S.D.W. Va. 2016) (citing 2 *Moore's Federal Practice* § 12.34 (Matthew Bender 3d Ed.)).

In adjudicating a motion for judgment on the pleadings, a court evaluates whether the pleadings state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). In doing so, a court must construe the facts in the light most favorable to the non-movant and "draw all reasonable inferences in [the non-movant's] favor." *Oberg*, 745 F.3d at 136. The court, however, need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "credit allegations that offer only naked assertions devoid of further factual enhancement . . . ." *Id.*

### III. DISCUSSION

In this case, the court is to consider the unique context of an auction contract for the purchase of real property entered into by a decedent and, consequently, his death estate's liability for the purchase price of the contract. Specifically, the Debtor contends that Mr. Knollinger anticipatorily breached the Purchase Agreement prior to his death and that it is entitled to a judgment against the Decedent's death estate for the contract price as well as consequential damages.

In response, the Defendants maintain that the Purchase Agreement should be interpreted according to its plain meaning and they argue that the plain meaning supports a decision that it is not binding upon them. Specifically, the Defendants claim that the language used in the Purchase Agreement, "[t]his contract is made for *the benefit* of each party hereto, their heirs, personal representatives, successors or assigns" implies that the Purchase Agreement was not to be binding upon them as they claim that the Purchase Agreement adds no "benefit" to the death estate, nor do they seek an interest in the Warwood Property.

A contract is a "promise, or set of promises" that is enforceable or otherwise recognizable at law. *Contract*, BLACK'S LAW DICTIONARY (11th ed. 2019). "The elements of a contract are an

offer and an acceptance supported by consideration." *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 287 (2012). An "auction" is defined as "any public sale of real or personal property in any manner . . . when offers or bids are made by prospective purchasers and the property sold to the highest bidder." W.Va. Code § 19-2C-1(h). "The main purpose of auction sales is to obtain the best financial return for the seller by the free and fair competition among bidders." *Alex Lyon & Son, Sales Managers & Auctioneers, Inc. v. Leach*, 844 S.E.2d 120, 126 (2020) (quoting 7A C.J.S. *Auctions and Auctioneers* § 1); *see also, Peck v. List*, 23 W.Va. 338, 377 (1883) ("What is the nature of such a sale by auction? It is that the goods shall go to the highest real bidder.").

Generally, the law in West Virginia provides that "in auction sales, a bid is regarded as an offer to contract which is accepted 'by the fall of the hammer.'" *Leach*, 844 S.E.2d at 127 (quoting *Clemens v. United States*, 295 F.Supp. 1339, 1340 (D.Or. 1968)). "The law is also clear that a bidder is generally bound by the published or announced terms and conditions of an auction, even if the bidder did not see or hear those terms and conditions." *Leach*, 844 S.E.2d at 130.

After executing a valid contract for the sale of real property and before the legal title passes by deed, "the vendor is regarded in equity as holding the legal title in trust for the vendee, and the latter as holding the purchase money in trust for the vendor." *Maudru v. Humphreys*, 83 W. Va. 307, 310-11 (1919). "The purchaser thereby acquires a vendable interest, an equitable estate which, at his death, descends to his heirs in the same manner as a legal estate." *Id*. at 311. Notably, it follows that "[a]n agreement to convey land is ordinarily binding on the heirs of a contracting party." *Maze v. Bennett*, 114 W. Va. 169, 171 (1933). Normally, when a purchaser defaults on a contract to purchase real estate, the vendor has a choice of various legal and equitable remedies including "keeping the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract." *Annon v. Lucas*, 155 W. Va. 368, 379 (1971).

Moreover, one generally has a duty to mitigate damages. "As a general rule a person whose property is endangered or injured must use reasonable care to mitigate the damages; but such person is only required to protect himself from the injurious consequence of the wrongful act by the exercise of ordinary effort and care and moderate expense." *Chesser ex rel. Hadley v. Hathaway*, 190 W. Va. 594, 600 (1993) (citation omitted).

The personal representative of an estate, such as an administrator, acts in a fiduciary capacity. *See Owens v. Owens*, 196 Va. 966, 972 (1953); *see also Virginia Trust Co. v. Evans*, 193

4

Va. 425, 433 (1952); s*ee also Claymore v. Wallace*, 146 W.Va. 379, 388 (1961).  It is "[h]is duty to manage the estate under his control to the advantage of those interested in it and to act on their behalf." *Latimer v. Mechling*, 171 W. Va. 729, 732 (1983).  In the discharge of this duty, the executor or administrator of a deceased's estate is "held to the highest degree of good faith, and is required to exercise the ordinary care and diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs." Syl. Pt. 4, *Lapinsky's Estate v. Sparacino*, 148 W.Va. 38 (1963).

Mr. Knollinger was the highest bidder when the November 20, 2019 auction concluded. The rules of the auction required him to pay a 10% buyer's premium in addition to the sale price of $400,000.00.  There were no buyer contingencies on the sale.  Mr. Knollinger signed the Purchase Agreement memorializing the contract and paid $5,000.00 as earnest money.  Therefore, a valid, written contract for the sale of the Warwood Property was completed in the amount of $440,000.00. Notably, at that point, Mr. Knollinger obtained an equitable interest in the Warwood Property which, at his death, descended to his heirs. *See Maudru*, 83 W. Va. at 311.  When Mr. Knollinger died, the contract was not void due to his death. *See Maze*, 114 W. Va. at 171.  But rather, his death estate became contractually obligated to pay the outstanding purchase price.

The court finds the Defendants' argument regarding the use of the specific phrase "for the benefit of" rather than "binding upon" unpersuasive.  Indeed, the Purchase Agreement does state that "[t]his contract is made *for the benefit* of each party hereto, their heirs, personal representatives, successors or assigns." However, as discussed above, the Purchase Agreement is binding on the Decedent's heirs which is not negated in any manner by the contract's terms.  Thus, the lack of the phrase "binding upon" is non-material in this context.  Moreover, the proposition that no benefit will be conferred upon the Decedent's death estate has no merit.  The Decedent's death estate obtained an interest in the Warwood Property, which is a benefit in and of itself to Mr. Knollinger and his death estate.  With such an interest, for example, the Defendants could have rented the property or re-sold it themselves.  Thus, this transaction would have clearly produced a benefit to Mr. Knollinger's death estate no matter how the Defendants decided to utilize the Warwood Property.

It is also irrelevant that the Defendants sought no interest in the Warwood Property.  The Defendants, as personal representatives of the death estate with fiduciary obligations, had a duty to manage the death estate under their control to the advantage of those interested in it and to act

5

on their behalf. *See Latimer*, 171 W. Va. at 732.  Again, the death estate included an interest in the Warwood Property.  The Defendants, therefore, were under a duty to pay the purchase price for the real estate for the benefit of those interested in the Decedent's death estate.  However, the Defendants failed to pay the outstanding purchase price and are liable to the Debtor.

To summarize, after construing the facts in the light most favorable to the non-movant and drawing all reasonable inferences in the non-movant's favor, the undisputed facts suggest that Mr. Knollinger executed a contract for the sale of the Warwood Property with the Debtor and anticipatorily breach the contract prior to closing.  After he died, the Defendants failed to honor the contract that was binding upon them as co-administrators of the Decedent's death estate.

The exact amount of damages remains at issue.  Taking judicial notice of this court's order in the bankruptcy case (Doc. No. 85), the court authorized the Debtor to re-sell the Warwood Property for $300,000.00 on January 4, 2021, thereby mitigating the Defendant's outstanding liability to the Debtor.  Nevertheless, the court will permit the parties to engage in discovery to elicit evidence of any incidental and consequential damages related to the re-sale of the Warwood Property.

### IV.    CONCLUSION

Based upon the foregoing, and consistent with Fed. R. Bankr. P. 9021, the court will enter a separate order granting the Debtor's motion for judgment on the pleadings regarding the Defendants' liability to the Debtor; however, it requests that the parties engage in a 60-day discovery period regarding any evidence of incidental and consequential damages related to the re-sale of the Warwood Property.